JOHN A. BAKER, Appellee, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant, et al.

SUBROGATION: Extent and Limitation of Right—Doctrine Inapplicable to Primary Liability. The right of subrogation never follows an actual primary liability. In other words, one who pays a debt in performance of his own covenants is not entitled to subrogation. In such case, payment is extinguishment.

PRINCIPLE APPLIED: The treasurer of a miners' union was under a fidelity bond wherein the surety agreed to hold the union harmless for any act of "fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misapplication

on the part of said employe, directly or through connivance with others." The union had its money on deposit in a bank. On orders properly drawn, the said treasurer forged the names of the payees; the bank, without authority, paid the orders; and the treasurer wrongfully appropriated the money to his own use. The union brought action on the bond. The surety impleaded the bank, and prayed for judgment against said bank in a sum equal to any judgment which the union might obtain against it (the surety). *Held*, the surety was primarily liable for the treasurer's misappropriation, and was not entitled to be subrogated to any right of the union against the bank.

**PLEADING:** Demurrer—Motion as Demurrer. A motion to strike a pleading wholly bad may be treated as a demurrer.

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

FRIDAY, NOVEMBER 17, 1916.

REHEARING DENIED SATURDAY, NOVEMBER 17, 1917.

A defendant and cross-petitioner appeals from an order striking a cross-petition.—*Affirmed.*

*Samson & Steer* for appellant.

*J. C. Mabry* and *John T. Clarkson,* for appellees.

1. SUBROGATION: extent and limitation of right: doctrine inapplicable to primary liability.

LADD, J.—This is an action by plaintiff in behalf of an association known as the Buxton Local Union No. 1799, District No. 13, a constituent part of an organization known as the "United Mine Workers of America," against the defendant as surety on the bond of W. H. Brown, financial secretary and treasurer of said union from July 1, 1913, to July 1, 1914. The petition alleges that, during October, 1914, other officers discovered that "said W. H. Brown had misappropriated all or a part of the moneys coming into his hands as such financial secretary and treasurer," and immediately gave

notice to defendant that defendant has "failed, omitted and neglected to pay said Local Union No. 1799 the money so lost, although the same has been demanded," and judgment for $800 was prayed. A copy of the bond in the usual form was attached, and also an itemized statement of the several sums alleged to have been embezzled. Thereupon defendant filed a cross-petition, making the Buxton Savings Bank defendant, alleging what plaintiff claims, and further that the "items set out in the said list were paid out by the said Buxton Savings Bank and charged against the checking account of said Local Union with the said bank. The claim of the said Local Union is that the said bank made such payments without authority therefor, upon checks or orders forged or the endorsements upon which were forged by said W. H. Brown, and charged the same to said checking account, and that thus the alleged loss accrued to the said Local Union. This defendant says that, if such claims of said Local Union be true, that then and in that event the primary liability for such loss is that of the said bank, and not of this defendant; and that, if it be true the defendant is under liability herein, then defendant should be allowed to recover herein against the said bank all sums for which this defendant shall be adjudged to be liable to plaintiff, and for costs. The said checks or orders are not in possession nor under the control of this defendant, and this defendant is unable to set out copies of them. Wherefore, this defendant prays that, if judgment should be rendered against this defendant herein, that the defendant have judgment for the same amount against the Buxton Savings Bank and for costs."

The Buxton Savings Bank moved that cross-petition be stricken from the files, for that: (1) The facts recited did not justify the filing of a cross-petition; (2) the savings bank might not be joined as defendant in this manner; (3) the cross-petition is not material to the issue raised by

the petition; (4) there is no privity of contract between de-
fendant and the savings bank requiring the bringing in
of said bank as a party to the action; and (5) the savings
bank is not a necessary party to any adjudication between
the original parties to the suit.  The motion was sustained.
The appeal is from this ruling.

In reviewing the ruling on the motion, the allegations
of the cross-petition must be assumed to be true.  If so,
we have this situation:   The American Surety Company
bound itself to pay "such pecuniary loss, not exceeding
$1,000, as said employer shall have sustained of money or
other personal property (including that for which employer
is responsible) by any act or acts of fraud, dishonesty,
forgery, theft, embezzlement, wrongful abstraction or mis-
application on the part of said employee, directly or through
connivance with others, while in any position or at any lo-
cation in the employ of said employer."   The Local Union
deposited its funds in the Buxton Savings Bank, and, as
is alleged, Brown forged checks or orders of the Local
Union, or endorsements thereon, and the bank paid these
from the funds of said Local Union.   As we understand
it, the orders were properly drawn payable to persons
entitled to the amounts named therein; but Brown, as is
alleged, forged the payee's name thereon and drew the
money, which he appropriated to his own use.   If so, this
is within the averments of the cross-petition quoted, and
the loss therefrom, if any, was occasioned by the dishon-
esty of Brown, as much as though he had forged the checks
or orders.   Because of the dishonesty of Brown, the funds
of the Local Union have been paid out by the bank, and the
theory of the plaintiff is that said union may look to the
Surety Company and Brown, instead of the bank, to recoup
the loss.   The contention of the surety is that the bank paid
the money on the forged checks, orders or endorsements,
and, upon paying the Local Union the loss suffered by it

through Brown's dishonesty, it is entitled to be subrogated to the claim the Local Union held against the bank because of paying out its money without its authority on the forged instruments. The bank, through its motion to strike, denied that the surety company has the right to subrogation, under the circumstances disclosed, and raised several other questions not necessary to be considered, in view of our conclusion.

Subrogation is defined by Bispham as the equity by which a person who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor, so as to entitle him to make use of all the securities and remedies possessed by the creditor, in order to enforce the right of exoneration as against the principal debtor, or of contribution against others who are liable in the same rank with himself. Bispham's principles of Equity (9th Ed.), Section 335.

Subrogation is said, in Section 1 of Sheldon on Subrogation, to be:

"The creature of equity, and is so administered as to secure real and essential justice without regard to form, independently of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid a debt of another, for which neither he nor his property was answerable, and it is not allowed where it would work any injustice to the rights of others."

The doctrine was derived from the civil law, but was early engrafted into the equity jurisprudence of England, and in this country its principles have been more widely applied than in England. Originally, it was exclusively of

equitable cognizance, but in recent years, seems to have been exercised in the common-law courts. Harris on Subrogation, Section 1. Wherever the doctrine is made use of, it is always for the promotion of justice and the prevention of inequitable results. It will never be enforced when doing so would be inequitable, or where it would work injustice to others having equal equities. *Makeel v. Hotchkiss,* 190 Ill. 311 (83 Am. St. 131) ; 37 Cyc. 370. It necessarily follows that the equities of one seeking subrogation must be greater than those of him against whom subrogation is sought. *Fort Dodge B. & L. Assn. v. Scott,* 86 Iowa 431.

"The doctrine of subrogation never interferes with equal or superior rights of others." *Vaughan v. Jeffreys,* 119 N. C. 135 (26 S. E. 94).

See *Musgrave v. Dickson,* 172 Pa. St. 629 (51 Am. St. 765). As remarked in *Acer v. Hotchkiss,* 97 N. Y. 395:

"The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resultant equity is steadily kept in view."

Subject to these principles, the rule is well established that:

"Where one person or his property is surety or stands in the position of a surety for the payment of a debt, for the payment of which another is primarily liable, the one who is only secondarily liable, upon payment of the debt to the original creditor, is entitled to be subrogated to all the rights, remedies, liens and securities held by the original creditor, as they existed at the time of such payment, as against the principal debtor and his property, or against any other person who may be liable for the payment of such debt. And this doctrine applies as well between co-sureties, co-debtors and co-obligors as between principal and surety, with the single exception that, as between the

paying surety and the principal debtor, there is no question of contribution." Harris on Subrogation, Section 197.

The surety company, then, is entitled to subrogation, if at all, to any claim the Local Union may have against the principal on the bond, Brown, or against any security said union may have on his property. But it had none, and the surety company is praying for no relief as against Brown or his property. Its cross-petition is based on the bank's liability to said union for the amount paid out by it on the forged checks, orders or endorsements, and it prays therein for subrogation to the claim of the Local Union on the theory that the bank's liability is primary and its liability secondary thereto. Of course, the bank necessarily assumed the risk in paying others than those to whom genuine instruments were payable, and in paying to others it acted without authority, and might not charge sums so paid to the account of the Local Union. The Local Union could have insisted that the bank account for all moneys on deposit, including those wrongfully applied on the forged checks, orders or endorsements, and on refusal maintain an action therefor. *German Sav. Bank v. Citizens Nat. Bank,* 101 Iowa 530. But the wrongful diversion of these moneys was induced by the dishonest conduct of Brown, to whom the money was paid, and, were the bank held for the payment of the funds dissipated, it would have a cause of action against Brown therefor. The plain difference in the situation of the two is that, were recovery had by the Local Union against Brown, he could not recoup in an action against the bank, whereas the bank, if compelled to restore to the union the moneys paid on the forged instruments, might demand reimbursement from Brown, and upon refusal, recover judgment against him. The Local Union has elected to sue the surety on the bond of Brown, rather than the bank. If the surety is adjudged

liable thereon, and pays the alleged loss occasioned by
Brown's dishonesty, it will merely pay Brown's indebted-
ness, and not that of another, even though the other may
also be liable therefor.   At the most, it is a case where each
of two parties may be held for the dissipation of the same
moneys, the bank because of paying out without authority,
and the other because of fraudulently inducing the bank so
to do.   In such a case, both are absolutely liable, and nei-
ther entitled to subrogation; for either, in paying, is satis-
fying his own indebtedness.   But the bank, on payment,
undoubtedly could recover over from the wrongdoer.   More-
ever, the equities of the surety, upon payment, would be
measured by those, if any, existing in behalf of its prin-
cipal, Brown; and, as between Brown and the bank, all are
in favor of the bank, and under the rules stated, subroga-
tion must be denied.   Otherwise, the forger or his surety
would be preferred to the one swindled by his forgeries.

As, on the allegations of the cross-pe-
2. PLEADING:        tition, the surety would not be entitled to
demurrer:
motion as de-    relief, there was no error in striking it from
murrer.
the files.   Probably the point might more
appropriately have been raised by demurrer, but if so,
this portion of the motion may be treated as a demurrer,
and the ruling be made accordingly.   It is not to be in-
ferred from anything said that we express any opinion
as to the liability of either Brown or the American Surety
Company to the Local Union.   We merely rule that the
allegations of the cross-petition do not entitle the defend-
ant and cross-petitioner to subrogation in event it is required
to pay the loss of said union.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.