L. A. ANDREW, Superintendent of Banking, D. W. BATES, Superintendent of Banking, Substituted Plaintiff, Appellant, v. UNION SAVINGS BANK AND TRUST COMPANY, of Davenport, Defendant; FULLER COMPANY, Intervenor. Appellee.

No. 42999.

NOVEMBER 12, 1935.

Cook & Balluff, for appellant.

Lane & Waterman, for appellee.

POWERS, J.—The facts on which the decision in this case must rest are not in controversy. They appear either by stipulation or documentary evidence.

The Fuller Company on October 20, 1932, instituted an action at law against S. A. Healy to recover the purchase price of merchandise sold and asked judgment for $9,039.49 and interest. The petition alleged that S. A. Healy was a nonresident of the state of Iowa and prayed for writ of attachment. The writ was issued and notice of garnishment served upon the Union Savings Bank & Trust Company of Davenport. J. R. Lewis, a representative of the firm of Lane & Waterman who were attorneys for the Fuller Company accompanied the deputy sheriff to the bank for the purpose of serving the garnishment. The garnishment was served on Smith Blackman, cashier of the bank. As to what then happened at the bank, we set out in full from the stipulation of the parties as follows:

"That upon service of said garnishment, said Smith Blackman checked the bank's records and advised the said J. R. Lewis that said bank was indebted to S. A. Healy on the three separate accounts in an aggregate sum in the neighborhood of $20,000; and that at said time the said Blackman also checked to see that there were no uncharged checks against said accounts in the bank's hands.

"That upon inquiry by the said Blackman as to whether or not the bank was to hold up all of the funds to the credit of said Healy in said accounts, or whether The Fuller Company was willing to fix a limit above which Healy might be permitted to draw, the said J. R. Lewis in the presence of Smith Blackman called Wayne G. Cook of the firm of Lane & Waterman, who was in charge of the attachment suit, and instructions were given by the said Wayne G. Cook that, if the bank would hold $13,559.24 to await the determination of the attachment suit, this would be satisfactory and it would not be necessary to tie up the remainder of said Healy's funds on deposit."

Following the conversation above referred to, the deputy sheriff made a return on his writ of attachment and took the answer of the bank as garnishee in which the bank stated that it was indebted to Healy in the sum of $13,559.24. The bank then made a notation on the ledger sheet of Healy's account that the account had been garnished to the extent of said amount and notified Healy that his account had been garnished in said amount and that he would be permitted to make deposits in and draw checks on said account, but would not be permitted to draw his account below said sum. Thereafter, Healy brought suit against the Fuller Company for the wrongful attachment. He also filed a motion to dissolve the attachment. While these matters were pending, the bank closed and went into receivership. The Fuller Company and S. A. Healy then settled their differences and entered into a stipulation which referred to this sum of $13,559.24 in the bank as a special deposit. Healy assigned this account to the Fuller Company and the attachment suit was dismissed. The Fuller Company filed claim for this sum and asked preference in payment. The district court allowed the preference and the receiver appeals.

The claimant-appellee does not contend that it is entitled to preference as an attaching creditor of Healy. It recognizes that Healy was only a general depositor and that by virtue of the garnishment it would obtain no greater right in the deposit than he had. It contends, however, that this is not merely a case of attachment. Its theory is that when the question arose at the bank as to whether the entire account of Healy, amounting to $20,000, should be held, that an entirely new arrangement was made, and that under the terms of that arrangement in lieu of

and as a substitute for the attachment, the bank was to hold this amount of money as a stakeholder or trustee pending the outcome of this litigation, and that a special deposit was thereby created. Appellee does not make its claim in these words. Perhaps it does not mean to claim so much. But to claim less would avail it nothing. Anything short of that would fail to create a special deposit.

The applicable rules of law are well settled and do not appear to be seriously in dispute between the parties. It is well established that in the ordinary transaction where a depositor puts money in a bank, the money becomes the bank's money and the bank owes the depositor a debt. The relation of debtor and creditor is created between the bank and the depositor. Under such circumstances, there is no preference in the payment of a claim for such deposit when the bank becomes insolvent and goes into receivership. A different rule applies where money is merely left with the bank under an arrangement with the bank that the money is to be used by the bank for some special purpose as, for example, to turn over to a particular person or to pay a particular debt. In all such cases the money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own. Such a deposit is said to be a special deposit. No relationship of debtor and creditor is created between the bank and the person making the deposit in such a transaction. Where the bank fails in such a situation, the owner of the fund has a right to claim it and to receive preference in payment of it where it passes into the hands of the receiver. This is because he is not a creditor of the bank at all in the ordinary sense, but the bank has property in its possession which belongs to him. In theory, such a situation is not substantially different than it would have been if the depositor had left specific property in the vaults of the bank for safekeeping and he attempted to reclaim it after the bank had failed and gone into the hands of a receiver. All deposits of money or credit in a bank are presumed to be general. The burden of proving a deposit is special is on one claiming it. These propositions are so well established and so widely accepted as to suggest the absence of the necessity for the citation of authority. Support for them may, however, be found in the following: note, 31 A. L. R. 472; 3 R. C. L. 516-522; 7 C. J. 641-644, 749-

750; Officer v. Officer, 120 Iowa 389, 94 N. W. 947, 98 Am. St. Rep. 365; Dolph v. Cross, 153 Iowa 289, 133 N. W. 669; Whitcomb v. Carpenter, 134 Iowa 227, 111 N. W. 825, 10 L. R. A. (N. S.) 928; Smith v. Sanborn State Bank, 147 Iowa 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336; Porter Auto Co. v. First Nat. Bank, 185 Iowa 844, 171 N. W. 121; Hudspeth v. Union T. & S. Bank, 196 Iowa 706, 195 N. W. 378, 31 A. L. R. 466; Iowa Mut. L. Ins. Co. v. De La Hunt, 197 Iowa 227, 196 N. W. 17; First National Bank v. Propp, 198 Iowa 809, 200 N. W. 428; Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; In re Receivership of Security Sav. Bank, 205 Iowa 171, 217 N. W. 831; Miller v. Andrew, 206 Iowa 957, 221 N. W. 543; Townsend v. Athelstan Bank, 212 Iowa 1078, 237 N. W. 356.

Under these general rules, it may be conceded that if money was left in the Union Savings Bank & Trust Company to be by the bank turned over to the successful party in pending litigation, and the bank was to be a mere stakeholder of such fund, and the bank knew of and consented to such an arrangement, then the fund would never become the bank's property; that the bank's relationship to it would be that merely of a bailee or trustee and that upon the insolvency of the bank the owner of the fund would be entitled to preference in payment if the fund passed into the hands of the receiver. The question here is whether any such arrangement was ever made.

Healy was but a general depositor in the bank at the time the writ of attachment was issued. To change a part of his deposit from that character into the character of a special deposit, such as we have described, certainly would require a contract. The burden is upon the claimant to prove such a contract. To prove that there was such a contract, it must certainly appear that there was, as in all cases of contract, a meeting of the minds of the parties upon such an arrangement.

It is claimed that the new arrangement was created by reason of the talk between Lewis and Cook, both associated with the firm of Lane & Waterman as attorneys for the plaintiff in the attachment suit, and arises because of the fact that when Lewis communicated to Cook the inquiry of the banker as to whether the bank was to hold all the funds to the credit of Healy, about $20,000, or whether the Fuller Company was willing to fix a limit above which Healy would be permitted to draw, Cook

said to Lewis, "If the bank would hold $13,559.24 to await the determination of the attachment suit this would be satisfactory," and the further fact that the bank thereafter held only the $13,-559.24.

We are of the opinion that this statement, and the subsequent conduct of the bank was not sufficient to meet the burden on claimant of proving an arrangement for a special deposit was made under all the facts and circumstances in this case, because the statement and the acts and conduct of the parties are equally consistent with the idea that what was being done was to arrive at a limit on the amount of property which was to be tied up by the garnishment. Indeed, the whole record is consistent only with the theory that that is all that was being done.

It would be a strange situation if a telephone conversation between Mr. Lewis and Mr. Cook, both associated with the firm of Lane & Waterman, attorneys for the Fuller Company, the plaintiff in the attachment suit, could have the effect of converting a general deposit of Healy in the Union Savings Bank & Trust Company into a special deposit. These two attorneys, no matter what they said to each other over the telephone, could not have accomplished that purpose. The bank had the money. It was owing to Healy. To change the nature of the deposit from a general to a special deposit, the fund, at least in legal contemplation, would have to be withdrawn from the general deposit and redeposited with and accepted by the bank under a new arrangement and for a special purpose only. Both the bank and the depositor Healy were necessary parties to such an arrangement. Healy was not even consulted. He knew nothing about it. It is not shown, either, that the statement of Cook was ever communicated to the bank. And if it had been, the bank certainly had a right to regard it merely as an answer to its inquiry as to whether the plaintiff wanted the whole account of Healy tied up or whether it wanted to fix a limit beyond which Healy would be permitted to draw. Moreover, if we take the language of Cook at its face value, it does not contemplate a special deposit in a legal sense. If the bank was to hold this amount under a special deposit arrangement, then it could not hold it because of the attachment. The one must have been a substitute for the other. Cook did not even suggest that the named amount be held until the outcome of the litigation or until the amount of Healy's debt to the Fuller Company was

determined. What he said was that it should be held "to await the determination of the attachment suit." To have an attachment suit, the attachment would have to be kept in force. If the bank was to hold the money because of the attachment, it could not hold it because of a special deposit arrangement in lieu of an attachment.

That the attachment was the thing being considered rather than an arrangement for a special deposit is further indicated by the amount of Healy's deposit which it was suggested be held. There is no explanation in the record as to how or why the sum of $13,559.24 was arrived at. It certainly was not the amount in controversy between Healy and the Fuller Company. The Fuller Company only asked judgment for $9,039.49. The only explanation, we think, is to be found in the provisions of section 12084, Code 1931, which authorized the sheriff under a writ of attachment to levy only on property 50 per cent greater in value than the amount claimed. If we add 50 per cent of the amount claimed in this case, we got $13,559.235. Can there be any doubt that the amount arrived at by the attorneys for the Fuller Company was arrived at because of this statute, and that it was so arrived at because it was conceived to be a case of attachment to which the statute was applicable, and because the plaintiff had no right to tie up more of Healy's account? Nobody claims that this amount was to be by the bank turned over to the Fuller Company in the event it was successful in its litigation with Healy.

Moreover, neither the Fuller Company, the bank, nor Healy acted upon any other theory than that an attachment was being effected of Healy's account in the Union Savings Bank & Trust Company. One of the attorneys for the Fuller Company accompanied the deputy sheriff to make the attachment and was, of course, present when the answer of the bank as garnishee was taken. A return to the writ of attachment was made. The answer of the garnishee was taken showing that it owed to Healy the sum of $13,559.24. This was all, not only in the presence of Lewis, one of the attorneys for the Fuller Company, but in pursuance of an arrangement which he, himself, made. The bank marked the ledger sheet of Healy's account as attached to that extent. Healy brought suit against the Fuller Company for wrongful attachment and filed a motion to dissolve the attachment. The receiver for the bank reported the de-

posit as attached to the extent of $13,559.24 on the strength of the memorandum which he found on the ledger sheet. At no time did the Fuller Company claim it did not have an attachment. It did not dismiss the attachment suit until the deposit had been assigned to it. It dismissed the attachment then only in consideration of the assignment of the claim.

It was reasonable, natural, and inevitable that the question as to how much of Healy's deposit was to be affected by the garnishment would arise when the claim against Healy was for less than $10,000, and it was discovered that his deposit was $20,000. The statute would not authorize an attachment of that much in excess of the claim. It certainly is not too much to presume that the deputy sheriff, and the attorney for the Fuller Company, and the banker all knew that. What could be more natural, therefore, than that the question of how much of Healy's account should be held under the attachment should arise, and that it should be disposed of in exactly the way it was disposed of in this case.

The conclusion is inescapable that what these parties intended by the transaction relied upon by appellee was to fix the limit of the amount of property to be garnished in accordance with the requirements of the statute. By intending to do that, their minds could not have met on the proposition of creating a special deposit arrangement under which the bank was to hold the fund as a substitute for an attachment. Without such expressed intention, consented to by all parties in interest, there could be no special deposit under the circumstances here.

More might be said, but the foregoing should be sufficient to indicate the reasons which have led us to the conclusion that there was no special deposit in this case.

It follows that the judgment of the trial court must be reversed.—Reversed.

ALBERT, ANDERSON, PARSONS, and HAMILTON, JJ., concur.