**HERITAGE BANK, Appellant,**

v.

**Terry LOVETT, Robert Lovett, and Roma Lovett d/b/a Culligan Water Conditioning of Ida Grove, Iowa, Appellees,**

**Richard Bennett, Defendant.**

**No. 98–0917.**

Supreme Court of Iowa.

June 1, 2000.

Rehearing Denied Aug. 10, 2000. *

Thaddeus E. Cosgrove of Cosgrove Law Firm, Holstein, for appellant.

Michael J. Frey of Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, for appellees.

Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines and Robert L. Hartwig, Iowa Bankers Association, Des Moines, for amicus curiae Iowa Bankers Association.

* McGiverin, C.J., and Snell, J., not participating.

CARTER, Justice.

Plaintiff, Heritage Bank (Heritage), appeals from an adverse summary judgment in an action seeking to recover funds obtained through the unauthorized use of an ATM card. The defendants, Terry Lovett, Robert Lovett, and Roma Lovett d/b/a Culligan Water Conditioning of Ida Grove, Iowa (Culligan), are the employers of Richard Bennett, the person who illegally obtained money from an ATM using an ATM card that Heritage had issued to Donald and Luella Buell. Heritage seeks to recover from Culligan on a theory of negligent hiring. After reviewing the record and considering the arguments presented, we agree with the conclusions of the district court that Culligan owed no duty to protect Heritage from Bennett's criminal action and that Heritage is not subrogated to any claim of the Buells against Culligan.

On December 5, 1995, Bennett, while working for Culligan, went to the residence of Donald and Luella Buell to perform services. While there he stole a wallet containing an ATM card issued in regard to the Buells' bank account with Heritage. Bennett subsequently used this card at various ATMs to misappropriate approximately $10,000. Heritage commenced this action based on two theories of recovery, *respondeat superior* and negligent hiring.

In ruling on successive motions for summary judgment filed by Culligan, the district court concluded that (1) Bennett's activities were not within the scope of his employment with Culligan so as to give rise to the doctrine of *respondeat superior*, (2) the loss for which Heritage seeks to recover was its own direct loss and not a loss suffered by the Buells to which Heritage is now subrogated, and (3) Culligan owed no duty to Heritage to protect it from Bennett's criminal acts. The legal consequence of these rulings was a total denial of Heritage's claims against Culligan.

## I. *The Bank's Common–Law Subrogation Claim.*

Heritage does not seek review of the district court's rejection of its *respondeat superior* theory. It posits its appeal on the claim that the loss occasioned by Bennett's use of the ATM card fell in the first instance on the Buells by way of diminution of their account and that Heritage became subrogated to the Buells' rights against Culligan by restoring all but fifty dollars of the Buells' loss. Heritage argues that because Culligan did owe a duty to protect the Buells from Bennett's actions it may assert the Buells' rights against Culligan in the role of a subrogee. We disagree with this contention.

■ As the district court correctly concluded, except for the sum of fifty dollars, the loss occasioned by Bennett's criminal acts was from its inception entirely that of the bank. The Buells never suffered any loss apart from the fifty dollars that was debited to their account. A subrogee may acquire no claim, security, or remedy that the subrogor does not have. *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 522 N.W.2d 39, 44 (Iowa 1994).

■ A bank deposit without reservation transfers the title of the funds from the depositor to the bank. *Huston v. Exchange Bank*, 376 N.W.2d 624, 626 (Iowa 1985); *Andrew v. Union Sav. Bank & Trust Co.*, 220 Iowa 712, 715, 263 N.W. 495, 497 (1935). The relationship that thereafter follows is one of debtor (the bank) and creditor (the depositor). *Huston*, 376 N.W.2d at 626; *Andrew*, 220 Iowa at 715, 263 N.W. at 497. In the latter case, we expressed this relationship as follows:

The applicable rules of law are well settled and do not appear to be seriously in dispute between the parties. It is well established that in the ordinary transaction where a depositor puts mon-

ey in a bank, the money becomes the bank's money and the bank owes the depositor a debt. The relation of debtor and creditor is created between the bank and the depositor.

*Id.*

A deposit agreement is subject to all applicable statutes that govern the relationship between the depositor and the bank to the same extent as if written in the agreement. *Clinton Nat'l Bank v. Saucier,* 580 N.W.2d 717, 719 (Iowa 1998); *Priest v. Whitney Loan & Trust Co.,* 219 Iowa 1281, 1287, 261 N.W. 374, 378 (1935). Federal law sharply limits the extent to which a bank may debit a depositor's account as the result of an unauthorized electronic funds transfer. The applicable statute provides:

A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other means of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of—

(1) $50; or

(2) the amount of money or value of property or services obtained. . . .

15 U.S.C. § 1693g (1994). The foregoing rules may be altered if the bank can establish that the loss was increased as a result of a delay by the depositor in reporting either a stolen ATM card or an unauthorized entry on a statement that the bank has sent to the depositor. Even in such instances, however, the bank may not debit the depositor's account for more than $500.

In the present case, the Buells promptly reported the unauthorized trans-

actions to the bank. Consequently, due to the proscriptions contained in this federal statute, Heritage, notwithstanding any contrary provision in its depositors agreement, could not debit the Buells' account for a sum greater than fifty dollars as a result of Bennett's unauthorized use of their ATM card.

We have recognized that subrogation may exist by agreement between the parties or may be based on equitable principles that permit one who has satisfied an obligation owed by another to a third party to be placed in the obligee's position vis-à-vis the primary obligor. *Kent v. Bailey,* 181 Iowa 489, 493–94, 164 N.W. 852, 853 (1917). The latter type of subrogation, which is the type involved in the present case, is granted to a person secondarily liable for a debt who has paid it and is designed to allow that party to enforce the creditor's right of exoneration against one that has been unjustly enriched. *Baker v. American Sur. Co.,* 181 Iowa 634, 638–40, 159 N.W. 1044, 1045–46 (1916). The need for the doctrine exists because ordinarily the subrogee does not possess a personal cause of action against the unjustly enriched party.

Heritage's attempt to claim against Culligan as a subrogee of the Buells must fail for two reasons. First, based upon the principles we have previously set forth, Heritage suffered the loss of the funds sought to be recovered in its own right and not as a result of satisfying any loss sustained by the Buells. Consequently, its entitlement to bring the present claim against Culligan should be based on its own relationship to that defendant rather than the Buells' relationship. In addition, and of equal significance, is the fact that the rights to which a subrogee succeeds are the same as and no greater than those of the person for whom the subrogee seeks to be substituted. *Central Nat'l Ins. Co.,* 522 N.W.2d at 44.

Prior to Bennett's criminal acts, the Buells' right to draw against their account at Heritage was measured by the balance

of funds that they had on deposit at that time. Immediately following Bennett's criminal acts the Buells' rights vis-à-vis their bank account at Heritage were precisely the same except for the fifty-dollar debit transaction. The Buells sustained no injury for which they could maintain an action against either Bennett or Culligan apart from the fifty-dollar item, which is not an issue in the litigation.[1]

We have considered Heritage's attempt to challenge our analysis based on language contained in 15 U.S.C. § 1693g and conclude that its effort is flawed. The language upon which Heritage relies provides "reimbursement need not be made to the consumer for losses which the financial institution establishes would not have occurred but for the failure of the consumer to report [the unauthorized use or theft]." Heritage contends that this language is a recognition that the loss, in the first instance, falls on the depositor. This contention is inaccurate because the depositor's rights vis-à-vis the bank are at all times determined by the law governing the transaction. As a practical matter in automated transactions of this type the account will almost always be debited on the bank's electronic records when an unauthorized electronic transfer occurs, but this does not change the depositor's legal entitlement from the bank. If the depositor sued the bank for a declaratory judgment as to the status of the depositor's account, the result would be the same irrespective of whether the bank had restored an improperly debited item. Consequently, a statute requiring reimbursement has exactly the same legal significance as a statute that prohibits the debiting of the depositor's account.

## II. *The Bank's Statutory Subrogation Claim.*

■ As an alternative to its common-law subrogation claim, Heritage relies on the subrogation provisions contained in Iowa Code section 554.4407. That statute provides in part:

> If a payor bank has paid an item over the order of the drawer or maker to stop payment, or after an account has been closed, or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank is subrogated to the rights
>
> ....
>
> c. of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose.

Iowa Code § 554.4407(c).

It is at once apparent that this statute pertains to checks or other bills of exchange drawn on banks. It has no operative language governing electronic funds transfers. Nor may Heritage make a colorable argument involving this statute by way of analogy. Section 554.4407(c) only grants a right of subrogation against a payee or other holder of the check improperly paid by the bank. In framing an analogy that might be applied to the electronic transfer situation based on the statutory directive involving checks, the analogous persons to be claimed against would be those persons obtaining the cash or to whom the cash might be traced. Such an analogy would not permit a subrogation claim against an employer of one of those persons based on negligent hiring.

In *Sunshine v. Bankers Trust Co.*, 34 N.Y.2d 404, 358 N.Y.S.2d 113, 314 N.E.2d 860 (1974), the New York Court of Appeals discussed the application of section 554.4407(c) in situations in which the customer's account has not in fact been debited. It recognized that subrogation in that situation did not track with common-law

---

1. Although the Buells were included as plaintiffs in the action, it is not clear whether they were seeking recoupment of their fifty-dollar loss. This makes no difference now, for they have not joined in the appeal.

theory but was a creature of statute. *Sunshine*, 358 N.Y.S.2d 113, 314 N.E.2d at 866 n. 6. Because there is no statute granting subrogation to a bank in Heritage's situation, it must depend on the common law, which grants it no rights as a subrogee.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except SNELL, J., who takes no part.