Anne F. **DANAHER**, Plaintiff,

v.

Terry J. **HARRINGTON** and Curtis McGhee, Defendants.

No. 1:11–cv–36 RP–CFB.

United States District Court,
S.D. Iowa,
Western Division.

March 13, 2012.

Patrick J. Hopkins, Hopkins Law Office PLC, West Des Moines, IA, Luis O. Mata, Rebecca M. Randles, Randles Mata & Brown, LLC, Kansas City, MO, for Plaintiff.

Seth R. Delutri, Bradshaw Fowler Proctor & Fairgrave, William S. Smith, Smith & Kramer PC, Alan O. Olson, Olson Law Office PC, Des Moines, IA, Thomas P. Frerichs, Frerichs Law Office, Waterloo, IA, Mel C. Orchard, The Spence Law Firm LLC, Jackson, WY, Stephen Dillard Davis, Steve Davis Law PC, Oak Brook, IL, for Defendants.

## ORDER

ROBERT W. PRATT, District Judge.

Anne Danaher ("Plaintiff" or "Danaher") filed the above-captioned action in

Pottawattamie County, Iowa on September 14, 2011, alleging claims for breach of contract, quantum meruit/implied in fact contract, unjust enrichment, promissory estoppel, and fraudulent inducement to contract against Terry Harrington ("Harrington") and Curtis McGhee, Jr. ("McGhee").[1] Harrington removed the action on October 6, 2011. Clerk's No. 1. Presently before the Court is McGhee's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, filed October 26, 2011. Clerk's No. 3. Plaintiff filed a resistance to the Motion on December 7, 2011. Clerk's No. 17. McGhee filed a Reply on December 19, 2011. Clerk's No. 20. A hearing was held on February 24, 2012. Clerk's No. 25. The matter is fully submitted.

## I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences ... in favor of the plaintiff." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A viable complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Twombly, 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949).

The Supreme Court, in Ashcroft v. Iqbal, described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). Iqbal, 129 S.Ct. at 1949–50. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. Id. Second, the factual allegations must be parsed for facial plausibility. Id. at 1950.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594. Indeed, "[r]equiring a plaintiff to

---

**1.** The five claims against Harrington are asserted in Counts 1, 3, 5, 7, and 9 of the Complaint, while the five claims against McGhee are asserted in Counts 2, 4, 6, 8, and 10. See Clerk's No. 1–1.

rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* at 597 (internal quotations and citations omitted).

A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1949. Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 1950–51. But, the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take account of [his or her] limited access to crucial information." *Braden*, 588 F.3d at 597.

## II. FACTUAL ALLEGATIONS OF THE COMPLAINT

### A. *General Allegations*

In 1977, Harrington and McGhee were arrested for the murder of retired Council Bluffs Police Captain John Schweer. Compl. ¶¶ 6–7. In 1978, both men were convicted of Schweer's murder and both remained incarcerated from 1977 until 2003. *Id.* The events leading to Harrington and McGhee's release from prison in 2003 form the basis for Danaher's claims against them.

In 1993, Plaintiff met Harrington while working as a prison barber at the Iowa State Penitentiary. *Id.* ¶ 9. Plaintiff developed a friendship with Harrington, and eventually came to believe Harrington's claims that he was innocent of Schweer's murder. *Id.* ¶¶ 10–13. After discussing the matter with Harrington's attorney, Plaintiff discovered that Harrington's post-conviction appeals had been exhausted and that the only way for Harrington to be released from prison would be if new evidence was discovered. *Id.* ¶ 13. Plaintiff claims that in 1994, she "entered an agreement such that she would look into the matter on [Harrington's] behalf, and if she was successful in getting him out of prison, she would be compensated for her services." *Id.* ¶ 14. Plaintiff "began investigating this matter in 1994," and "[a]t all times, Harrington understood that [Plaintiff] would be entitled to repayment for the funds she expended on his behalf, the costs she incurred, and the time she put into the matter." *Id.* ¶¶ 15–16. After many years and the expenditure of a great deal of time, energy, and money, Plaintiff eventually obtained the complete police file on Schweer's murder. *Id.* ¶¶ 20–42. The police file contained nine police reports that were never produced to Harrington or McGhee during their 1978 trial. *Id.* ¶ 42. These police reports and other information collected by Plaintiff were used in a post-conviction relief proceeding by Harrington that ultimately led to the Iowa Supreme Court reversing and vacating Harrington's murder conviction, and to Harrington's release from prison on April 17, 2003. *Id.* ¶¶ 42–73. In light of the Iowa Supreme Court's decision regarding Harrington, in approximately October 2003, McGhee entered into an agreement with prosecutors whereby McGhee's murder conviction was set aside, and he entered an *Alford* plea to second-degree murder in exchange for a sentence of time-served. *Id.* ¶ 79.

McGhee was released from prison in October 2003. *Id.* ¶ 81. Harrington and McGhee each brought lawsuits against various county and city officials for their wrongful imprisonment. *Id.* ¶ 82. County officials settled the lawsuits with Harrington and McGhee in late 2009. *Id.* ¶¶ 84–85. Portions of Harrington's and McGhee's lawsuits against the city officials remain pending. *See* Case Nos. 4:03–cv–90616, 4:05–cv–255, and 4:05–cv–178.

### B. *General Factual Allegations Specific to McGhee* [2]

Though the Complaint contains extensive factual allegations as to her claims against Harrington, Danaher alleges only the following specific facts with regard to her claims against McGhee: [3]

- Ms. Danaher learned that McGhee similarly maintained his innocence regarding the murder of Captain John Schweer. Compl. ¶ 12.
- The father of Curtis McGhee, Jr., whose name is Curtis McGhee, Sr., paid Ms. Danaher initially, paid for the trial transcripts in the matter, thanked her for her work as no one else would do it, and promised that she would be remunerated if anything came from her efforts. At all times, Curtis McGhee, Sr. spoke on behalf of his incarcerated son, Curtis McGhee, Jr. *Id.* ¶ 18.
- Ms. Danaher recognized that as Harrington and McGhee were serving life sentences in prison, the only way that she would be paid would be if she successfully got them released and they recovered either money judgments against those who concocted the evidence to frame them or they found alternate sources of revenue once released. *Id.* ¶ 19.

- [After Harrington gave Plaintiff power of attorney], Ms. Danaher began trying to find the witnesses that had testified against Harrington and Curtis McGhee, Jr., over sixteen years before.... *Id.* ¶ 26.
- Ms. Danaher did not spend holidays with her family. Instead, she would spend her days at the prison trying to keep Harrington's spirits up as she encountered road block after victory and victory after roadblock. She sent encouraging words and updates on the investigation to McGhee's father as well, as she could not be on the visitor's list of two inmates. *Id.* ¶ 37.
- [Despite reports indicating another potential suspect in Schweer's murder], [t]he prosecutors indicated during the first trial and the post conviction appeals that Harrington and McGhee were the only suspects.... *Id.* ¶ 45.
- On or about October of 1999, Ms Danaher also relayed information concerning her finds with Curtis McGhee, Sr., the father of McGhee. *Id.* ¶ 48.
- After Ms. Danaher began working for Harrington and McGhee, the prison staff as early as 1995 began harassing her, inappropriately searching her, touching her inappropriately and making rude and lewd comments to and about her. *Id.* ¶ 54.
- [After Harrington's release from prison,] Ms. Danaher reassured McGhee through his father that she would continue her efforts o[n] behalf of McGhee, so that he too could [be] released from prison. *Id.* ¶ 76.
- After the Supreme Court decision and Harrington's April 2003 release, McGhee

---

2. The Court will detail specific within-count allegations of the Complaint against McGhee in the law and analysis section, *infra.*

3. All bulleted items throughout this Order are quotations from Plaintiff's Complaint. For stylistic purposes, however, the Court has omitted quotations marks.

panicked and on or about October of 2003 McGhee agreed to an *Alford* Plea of second-degree murder. *Id.* ¶ 79.

• Then Ms. Danaher went back to work on behalf of both Harrington and McGhee, interviewing witnesses and solidifying the recantations of witnesses. *Id.* ¶ 80.

• On October 24, 2003, all charges were dropped against Harrington, and McGhee was released from prison also in October of 2003. *Id.* ¶ 81.

• In 2005, Harrington filed a 42 U.S.C. § 1983 claim[ ] against the prosecutors, city, county and police department. Defendant McGhee also filed suit and the suits have been consolidated. *Id.* ¶ 82.

• After [arguments before the United States Supreme Court] but before decision, Harrington and McGhee and the [County] defendants they had sued agreed to a settlement.... *Id.* ¶ 85.

• Ms. Danaher made demand upon both Harrington and McGhee for reimbursement of her expenses and remuneration for her work after she had learned of the settlement. *Id.* ¶ 86.

• Despite her demand, the defendants have failed and refused to pay her for her time and effort and have refused to reimburse her for her out of pocket expenses related to the matter including funds provided to the defendants and attorneys directly. *Id.* ¶ 87.

### III. LAW AND ANALYSIS

#### A. *Elements of Claims Asserted*

##### 1. *Count Two: Breach of Contract.*

A claim for breach of contract requires proof of:

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) [that] defendant[ ] breach[ed] ... the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 825 (Iowa 1993)).

##### 2. *Count Four: Quantum Meruit/Implied in Fact Contract.*

A party seeking recovery under an implied in fact contract must show: 1) the services were carried out under such circumstances as to give the recipient reason to understand: (a) they were performed for him and not some other person, and (b) they were not rendered gratuitously, but with the expectation of compensation from the recipient; and 2) the services were beneficial to the recipient. *Roger's Backhoe Serv., Inc. v. Nichols,* 681 N.W.2d 647, 651 (Iowa 2004). Quantum meruit damages for a breach of implied-in-fact contract are "the reasonable value of the services provided and the market value of the material furnished." *Iowa Waste Sys. v. Buchanan Cnty.,* 617 N.W.2d 23, 30 (Iowa Ct.App.2000).

##### 3. *Count Six: unjust enrichment.*

"The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receipt property or benefits without paying just compensation." *State Dep't of Human Serv. ex rel. Palmer v. Unisys Corp.,* 637 N.W.2d 142, 154 (Iowa 2001). Unjust enrichment is an equitable doctrine that requires proof that: 1) the defendant was enriched by the receipt of a benefit; 2) the enrichment was at the expense of the plaintiff; and 3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Id.* at 154–55 ("Although it is referred to as a quasi-contract theory, it is equitable in nature, not contractual.").

4. *Count Eight: promissory estoppel/Restatement (2d) Contracts § 90.*

■ A claim for promissory estoppel requires proof of: 1) a clear and definite promise; 2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; 3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and 4) injustice can be avoided only by enforcement of the promise. *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999).

5. *Count Ten: fraudulent inducement to contract.*

■ In Iowa, the elements of a claim for fraudulent inducement include: 1) a representation; 2) falsity; 3) materiality; 4) scienter; 5) intent; 6) justifiable reliance; and 7) resulting injury or damage. *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996). These elements must be established by clear and convincing evidence. *Id.*

## B. *Agency*

■ Since Plaintiff admits that she did not ever communicate directly with McGhee because she never actually spoke to McGhee, many of her theories of liability rely exclusively on her interaction with McGhee's father, Curtis McGhee, Sr. (hereinafter "Senior"). In particular, Counts Two (Breach of Contract), Four (Implied in Fact Contract), Eight (Promissory Estoppel), and Ten (Fraudulent Inducement to Contract) all are founded on the events articulated in paragraph 18 of the Complaint, i.e., that Senior, "[speaking] on behalf of his incarcerated son," "paid Ms. Danaher initially, paid for the trial transcripts in the matter, thanked her for her work as no one else would do it, and promised that she would be remunerated if anything came from her efforts." *See*

Compl. Count 2 (asserting that a contract was formed on the basis of this conversation); *id.* Count 4 (indicating that Plaintiff carried out services for McGhee on the basis of this conversation); *id.* Count 8 (referencing the conversation with Senior as the clear and definite promise that precipitated her actions); *id.* Count 10 (stating that Senior, as McGhee's agent made the promise referenced to induce her to act).

To sustain any of these claims on the basis of an agency theory, Plaintiff must plead sufficient facts to give rise to a plausible belief that Senior had either actual or apparent authority to enter into contractual relationships with Plaintiff or otherwise take actions on behalf of McGhee. The problem with Plaintiff's claims in this regard is that she has pleaded no *facts* at all regarding anything that McGhee himself did that would support a claim that Senior possessed any actual or apparent authority to act on McGhee's behalf. *See Asa–Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 749 (8th Cir.2003) ("Actual authority exists if the agent has been granted authority to act on the behalf of the principal 'either expressly or by implication.' Actual authority 'focuses on communications and contacts *between the principal and the agent.*' Apparent authority, by contract, is 'determined by *what the principal does,* rather than by any acts of the agent.' " (emphasis added, citations omitted)). Rather, Plaintiff has pleaded only *legal conclusions* that Senior had some type of authority. *E.g.*, Compl. ¶ 18 ("At all times, Curtis McGhee, Sr. spoke on behalf of his incarcerated son, Curtis McGhee, Jr."), *id.* ¶ 98 ("Curtis McGhee, Sr., acting as an agent and on behalf of his son, promised to remunerate Ms. Danaher for her assistance to her son."). This is insufficient to satisfy the *Iqbal* pleading standard. *See Sabilia v. Richmond*, No. 11–739, 2011 WL 7091353, at *11 (S.D.N.Y. Oct. 26, 2011) ("Pursuant to *Iqbal's* rule

that we need not accept as true 'a legal conclusion couched as a factual allegation,' a simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship. Thus, if an agency relationship were a prerequisite for recovery, such a conclusory allegation would not state a valid claim for relief."); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F.Supp.2d 505, 512–13 (E.D.Pa. 2009) (holding that under *Iqbal*, a plaintiff's conclusory allegations of agency were insufficient to establish actual or apparent authority). Thus, Counts Two, Four, Eight and Ten cannot survive McGhee's 12(b)(6) motion because they fail to allege sufficient facts to support a plausible entitlement to relief.

### C. *Statute of Limitations*

■ Counts Two, Four, Eight and Ten are further barred by the statute of limitations in Iowa Code § 614.1(4), which provides that actions based on "unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in ... and all other actions not otherwise provided for in this respect" must be brought within five years of the date the cause of action accrues. *See* Def.'s Br. at 17. An action "accrues" under Iowa law when the "aggrieved party has a right to institute and maintain a suit." *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 462 (Iowa 1984).

[8] Whether characterized as a promise or a contract, the claimed "agreement" Plaintiff entered into with Senior on behalf of McGhee stated, according to the Complaint, that "[Plaintiff] would be remunerated if anything came from her efforts."

Compl. ¶ 18. Plaintiff argues in her resistance brief that the "terms" of the parties deal were that "Danaher must work to free McGhee, and if he receives money after his release, then she would be paid." Pl.'s Resistance Br. at 14. This argument is unconvincing. On the facts asserted in paragraph 18 of the Complaint, Senior is alleged to have promised that Plaintiff would be "remunerated *if anything* came from her efforts." Plaintiff does not allege that Senior promised that she would be remunerated if McGhee "gets a monetary award from a lawsuit at some point in the future." The difference is significant because, as pleaded in the Complaint, Plaintiff's claimed right to remuneration is in no way tied to a receipt of a monetary award by McGhee; rather her right to remuneration was tied to the point in time when "anything came from her efforts." The parties intended definition of "anything" is not clear. It could be interpreted to mean that Plaintiff would be remunerated if she found exculpatory evidence, if she did something to aid McGhee in obtaining a post-conviction relief proceeding, or if she did something that resulted in McGhee obtaining a new trial. On the face of the Complaint, however, it seems abundantly clear that McGhee's release from prison in October 2003 would constitute "[some-]thing com[ing] from Plaintiff's efforts."

This means that on the facts alleged, Plaintiff would have been entitled to remuneration, if at all, no later than the date of McGhee's release from prison in October 2003. Indeed, not a single allegation in the Complaint supports even an inference that Plaintiff's *right to payment* was somehow contingent on McGhee obtaining a large monetary settlement from an award.[4]

---

4. Plaintiff conflates her claim against McGhee with her claim against Harrington. As to Harrington, Plaintiff makes specific allegations that Harrington promised her, in writing, twenty percent of "all claims awarded to [him] in association with [his] false imprison-

ment and Civil Rights Violation [case]" as compensation for her work on his behalf. Compl. ¶ 56. Thus, Plaintiff's right to payment by Harrington *is* at least arguably contingent on his receipt of a monetary award. As to McGhee, however, the sole factual alle-

On the contrary, Plaintiff's own factual allegations recount that Plaintiff "recognized that . . . the only way that *she would be paid* would be if . . . [Harrington and McGhee] recovered either money judgments against those who concocted the evidence to frame them *or they found alternate sources of revenue once released.*"[5] Compl. ¶ 19. Thus, Plaintiff's various contractual/promise based claims accrued in or around October 2003. Plaintiff did not, however, file suit until September 2011, nearly eight years later. Her claims in Counts Two, Four, Eight, and Ten, are accordingly barred by the applicable statute of limitations.

### D. *Counts Two, Four, Eight, and Ten*

#### 1. *Count Two—breach of contract.*

Plaintiff's claim against McGhee in Count 2 alleges breach of contract. In addition to the general factual allegations noted previously, Plaintiff makes the following specific allegations against McGhee in Count 2:

- On or about July 1994, Ms. Danaher discussed her work on behalf of Harrington with Curtis McGhee, Senior, the father of McGhee. *Id.* ¶ 96.
- As Ms. Danaher did not have and could not get permission to be placed on the visiting list of McGhee, her communications took place through his father, Curtis McGhee, Sr., who acted in a representative and/or agency capacity for his incarcerated son. *Id.* ¶ 97.
- Curtis McGhee, Sr., acting as an agent and on behalf of his son, promised to remunerate Ms. Danaher for her assistance to his son. *Id.* ¶ 98.
- Curtis McGhee, Jr. ratified that agreement between Ms. Danaher and his father by agreeing to pay Ms. Danaher for her efforts and expenses. *Id.* ¶ 99.
- In furtherance of that oral agreement, Curtis McGhee, Sr. paid for certain transcripts and other materials necessary for the investigation into the wrongful imprisonment of his son. *Id.* ¶ 100.

Danaher further alleges that she has performed all contractual duties required of her and achieved the result of freeing McGhee from prison, but that McGhee has breached the contract by failing to reimburse Danaher for reasonable and actual expenses, and for her time, skills, and dedication. *Id.* ¶¶ 101–03.

Even assuming that Plaintiff had adequately alleged that Senior was McGhee's agent for purposes of contract formation and that Plaintiff's claim was not barred by the statute of limitations, Plaintiff's breach of contract claim against McGhee would still not survive McGhee's Rule 12(b)(6) motion. The only "facts" alleged to support either the existence of or terms of any contract with McGhee appear in paragraphs 18–20 of the Complaint. In paragraph 18, Plaintiff alleges that Senior "paid Ms. Danaher initially, paid for the trial transcripts in the matter, thanked her for her work as no one else would do it, and promised that she would be remunerated if anything came from her efforts." In paragraph 19, Plaintiff states that she "recognized" that she would only get paid if McGhee were released from prison and managed to win or otherwise obtain funds to pay her, and in paragraph 20, Plaintiff states that she "accepted these terms." Thus, Plaintiff's contract formation theory is that Senior made an offer that was subsequently accepted by Plaintiff. *See*

---

gation is that Plaintiff would be "remunerated if anything came from her efforts." *Id.* ¶ 18.

**5.** This factual allegation clearly distinguishes the right to repayment from the Defendants' ability to pay. As in any case where payment for services is expected, however, a party's *right to payment* is not contingent on the obligor's *ability to pay.*

Pl.'s Resistance Br. at 13 (stating that Danaher communicated to Senior the work she had been doing for Harrington, Senior "on behalf of his son, offered to compensate Danaher for 'her assistance to his son,'" if "anything came of her efforts" and Danaher "accepted these terms").

"It is fundamental that a valid contract must consist of an offer, acceptance, and consideration." *Margeson v. Artis,* 776 N.W.2d 652, 655 (Iowa 2009) (citing *Taggart v. Drake Univ.,* 549 N.W.2d 796, 800 (Iowa 1996)). Additionally, a valid contract must contain "sufficiently definite terms to be enforced." *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.,* 762 N.W.2d 463, 475 (Iowa 2009). Accepting Plaintiff's factual allegations regarding her interaction with Senior as true, they are insufficient to support a plausible belief either that Senior made an offer or that any potential contract contained sufficiently definite terms to be enforceable.

▬▬▬ "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* (quoting *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 285 (Iowa 1995)); *see also Heartland Exp., Inc. v. Terry,* 631 N.W.2d 260, 268 (Iowa 2001) ("The test for an offer is whether it induces a reasonable belief in the recipient that the recipient can, by accepting, bind the sender." (citations omitted)). The existence of an "offer" must be determined objectively, not subjectively. *Id.* "If an offer is indefinite, there is no intent to be bound." *Magnus-*

*son Agency v. Pub. Entity Nat'l Co.-Midwest,* 560 N.W.2d 20, 26 (Iowa 1997); *see also Anderson,* 540 N.W.2d at 286 (citing with approval *Architectural Metal Sys., Inc. v. Consolidated Systems, Inc.,* 58 F.3d 1227, 1229 (7th Cir.1995)) ("A lack of essential detail would negate such a belief, since the sender could not reasonably be expected to empower the recipient to bind him to a contract of unknown terms.... [T]he recipient of a hopelessly vague offer should know that it was not intended to be an offer that could be made legally enforceable by being accepted."). Here, nothing about Senior's alleged "offer" is indicative of inviting assent or a willingness to be bound. Indeed, the terms of the alleged offer are so vague and indefinite that no court or reasonable jury would be able to determine with any "reasonable certainty the duty of each party and the conditions relative to performance." *Hinshaw v. Ligon Indus., LLC,* 551 F.Supp.2d 798, 809–10 (N.D.Iowa 2008). As pleaded, there are absolutely no factual allegations as to precisely *what* work Plaintiff was to perform on behalf of McGhee, for what services or expenses she would be provided remuneration, the amount of any potential remuneration, whether there would be any limitations on dollar amounts Plaintiff could expend, or the length of time in which Plaintiff's services were expected to be performed. *See Scharf v. Greg's Lawn Serv., Inc.,* 2001 WL 725994, at *2 (Iowa Ct.App. June 29, 2001) (finding that where parties "at best" agreed that one would pay the other "an unknown amount of money at an unknown time," the "terms of agreement [were] too indefinite to give legal effect to the parties' purported oral contract").[6]

---

**6.** The Court is also extremely dubious that Plaintiff has adequately pleaded consideration. *See* Def.'s Br. at 6–7. Additionally, Plaintiff has alleged insufficient facts to support a plausible belief that she performed her own "contractual" obligations fully given that there are no factual allegations in the Complaint tying Plaintiff's claimed efforts on

McGhee's behalf to McGhee's release from prison. *See generally* Compl. (detailing how Plaintiff's research resulted in a post-conviction review of Harrington's case, which directly led to Harrington being released from prison, but stating as to McGhee only that he "panicked" and "agreed to an *Alford* Plea of second-degree murder" with no supporting

### 2. Count Four—quantum meruit/implied in fact contract.

██ Plaintiff's claim against McGhee in Count 4 alleges quantum meruit/implied in fact contract. In addition to the general factual allegations noted previously, Plaintiff makes the following specific allegations against McGhee in Count 4:

- The services which Ms. Danaher performed on behalf of McGhee were carried out under such circumstances so that McGhee understood that: a. they were performed specifically for him, and b. they were not rendered gratuitously, but were performed by Ms. Danaher with the expectation of compensation from McGhee; and c. the services were clearly beneficial in that McGhee obtained his freedom when as a consequence of Ms. Danaher's efforts he was released from prison. Compl. ¶ 108.
- Ms. Danaher is entitled for compensation from McGhee, under the doctrine of quantum meruit, for all the services peform[ed] by her and for all expenses incurred by her which benefitted McGhee. *Id.* ¶ 109.

The specific allegations are not *factual allegations;* rather, they are legal conclusions, which must be disregarded for purposes of the *Iqbal* analysis. The only specific *factual allegations* supporting this claim are that McGhee's father promised Plaintiff remuneration for her efforts (*id.* ¶ 18), Plaintiff "sent encouraging words and updates on the investigation to McGhee's father" (*id.* ¶ 37), and Plaintiff "reassured McGhee through his father that she would continue her efforts o[n] behalf of McGhee, so that he too could [be] released from prison" (*id.* ¶ 76). The Court does not believe these allegations of occasional words of encouragement are sufficient to show a plausible claim either that McGhee should have understood that

factual allegation as to how McGhee's plea

Plaintiff was acting specifically for him or that Plaintiff expected compensation for her services. Indeed, apart from baldly asserting that McGhee's father was McGhee's agent, Plaintiff has not even alleged that McGhee was aware of any of Plaintiff's communications or actions. Moreover, as discussed in footnote 5, *supra,* Plaintiff has also not alleged that she actually performed any particular service that resulted in McGhee's release from prison.

### 3. Count Eight—promissory estoppel.

Plaintiff's claim against McGhee in Count 8 alleges promissory estoppel. In addition to the general factual allegations noted previously, Plaintiff makes the following specific allegations against McGhee in Count 8:

- Defendant McGhee made a clear and definite promise to Ms. Danaher to reimburse her for her time and expenses. Compl. ¶ 124.
- Defendant McGhee's promise was made with his clear understanding that … Ms. Danaher was seeking an assurance upon which she could rely and without which she would not act. *Id.* ¶ 125.
- Ms. Danaher acted to her substantial detriment in reasonable reliance on McGhee's promise to reimburse her for her services and expenses. *Id.* ¶ 126.
- The injustice be avoided only by enforcement of the promise made by McGhee to Ms. Danaher. *Id.* ¶ 127.

As with Plaintiff's quantum meruit claim, the specific allegations are not *factual allegations;* rather, they are legal conclusions, which must be disregarded for purposes of the *Iqbal* analysis. The only specific *factual allegations* supporting Plaintiff's promissory estoppel claim are those previously asserted, *i.e.,* that

was the direct result of Plaintiff's efforts).

McGhee's father promised Plaintiff remuneration for her efforts and paid for a transcript (*id.* ¶ 18), and Plaintiff occasionally updated McGhee's father on her work (*id.* ¶ 37, 76). Noticeably absent from Plaintiff's Complaint, however, are any *facts* supporting a plausible conclusion that Plaintiff would not have acted without Senior's promise on behalf of McGhee, or that Plaintiff's actions were taken in reasonable reliance on *Senior's* promise. Indeed, the allegations of the Complaint clearly demonstrate that Plaintiff had agreed to work on *Harrington's* behalf before she ever even spoke to McGhee's father and that she continued to work on Harrington's behalf, as promised, after speaking to McGhee's father, doing precisely the same things she now claims she did "for McGhee."

### 4. *Count Ten—fraud by inducement.*

Plaintiff's claim against McGhee in Count 10 alleges fraud by inducement. In addition to the general factual allegations noted previously, Plaintiff makes the following specific allegations against McGhee in Count 10:

- Defendant McGhee, acting through his agent, promised Ms. Danaher that he would remunerate her for her efforts on his behalf, including her time and monies she expended on his behalf. Compl. ¶ 137.
- That promise was made without the intention of performance and for the purpose of inducing Ms. Danaher to act on his behalf. *Id.* ¶ 138.
- Defendant McGhee acted with the intent to deceive Ms. Danaher so that she would work to free him from prison. *Id.* ¶ 139.
- Ms. Danaher acted on the continued representations of defendant McGhee, working tirelessly for over nine years to free the falsely accused man. *Id.* ¶ 140.

- Ms. Danaher justifiably relied upon the continued representations of defendant McGhee that he would remunerate her for her services and repay the monies she expended on his behalf. *Id.* ¶ 141.

As was the case with other counts, Plaintiff's "specific" allegations do not allege any additional *facts* in support of her claim.

■ On the basis of the very few *factual* allegations against McGhee in the Complaint, the Court cannot conclude that Plaintiff has stated a plausible entitlement to relief for fraud by inducement. She has not alleged any facts supporting a conclusion that Senior's promise was material to her continued work in the case, that McGhee intended to deceive her by falsely inducing her to work on his case, or that she justifiably relied on Senior's representations in continuing to do work that she was already doing on behalf of Harrington.

### E. *Count Six—Unjust Enrichment*

Since McGhee did not become "enriched" until he obtained a settlement with the County defendants in his civil rights litigation, Plaintiff's unjust enrichment claim is not barred by the five year statute of limitations. Additionally, since unjust enrichment does not require an express act by McGhee or by an agent of McGhee's, it is not directly barred by Plaintiff's failure to adequately plead facts supporting a conclusion that Senior was McGhee's agent. Nonetheless, Plaintiff's claim for unjust enrichment cannot survive McGhee's 12(b)(6) motion.

■ Both parties contend that *Unisys* supports their position on Plaintiff's unjust enrichment claim. McGhee argues that the case bars Plaintiff's claim because the Court therein held that "a plaintiff who has an independent obligation to a third person cannot maintain an action for unjust enrichment against a defendant who is

incidentally benefitted by the performance of that obligation to the third person." Def.'s Br. at 15 (citing *Unisys,* 637 N.W.2d at 155). Plaintiff counters that, as in *Unisys,* Plaintiff's labor was not "incidental," and further, that her labor "directly, and at times exclusively, conferred a benefit upon McGhee." Pl.'s Br. at 4–7. The Court agrees with McGhee that, as pleaded, Plaintiff has not alleged anything that she did for McGhee that she was not independently doing for Harrington, and that the facts alleged in the Complaint do not support a plausible belief that McGhee was anything more than an incidental beneficiary of Plaintiff's work on behalf of Harrington.

Plaintiff points out that she obtained McGhee's trial transcript and communicated regularly with his father and that these were acts she undertook exclusively for McGhee. Pl.'s Br. at 6. Plaintiff's own allegations, however, indicate that she obtained this transcript *before* even talking to Senior, i.e., that she obtained it gratuitously during the course of her services to Harrington. *See* Compl. ¶ 18. Moreover, once informed that she had obtained the transcripts, McGhee's father actually "paid for the trial transcripts in the matter," obviating any argument that it would be unjust to permit McGhee to avoid paying Plaintiff for at least that portion of her claimed services. *Id.*

To the extent Plaintiff claims that obtaining a transcript and relaying information to Senior benefitted McGhee, she has alleged absolutely no facts tying these or any other "services" to either McGhee's release from prison, or more importantly, to McGhee's receipt of a settlement from the County defendants in his civil rights case. *See* Compl. ¶ 79, 81 (providing the only factual allegation as to *why* McGhee was released from prison: "After the Supreme Court decision and Harrington's April 2003 release, McGhee panicked and

on or about October 2003 McGhee agreed to an *Alford* Plea of second-degree murder" and "was released from prison also in October of 2003"); *id.* ¶ 82 (stating that McGhee and Harrington filed § 1983 claims against the prosecutors, city, county, and police department). The settlement was provided to McGhee to compensate him for his claims under 42 U.S.C. § 1983 that egregious constitutional violations resulted in his being wrongfully imprisoned for approximately twenty-five years for a crime that he did not commit. While McGhee arguably *may* never have been able to bring such claims were it not for Plaintiff's discovery of previously undisclosed evidence, Plaintiff has not alleged that McGhee received compensation in the settlement for expenditures that she made or for any other funds to which she would otherwise be entitled. McGhee's receipt of a money settlement for his wrongful imprisonment was neither "at Plaintiff's expense" nor would it be "unjust to allow [McGhee] to retain the benefit" under these circumstances. *See Slade v. M.L.E. Inv. Co.,* 566 N.W.2d 503, 506 (Iowa 1997) ("A plaintiff seeking recovery under this doctrine must prove the defendant received a benefit that in equity *belongs to the plaintiff.*" (emphasis added)); *In Re Estate of Stratman,* 231 Iowa 480, 1 N.W.2d 636, 642 (1942) (finding it essential to prove "that a defendant has received money which in equity and good conscience belongs to plaintiff").

## IV. CONCLUSION

The present case graphically demonstrates the difference between the viable complaint pleading requirements under *Conley v. Gibson* and those under *Iqbal.* Compare *Conley,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (requiring "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of [her] claim which would entitle [her] to relief") *with Iqbal,* 129 S.Ct. at 1939, 1949 (requiring a complaint to include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (quotation marks and citation omitted)). Here, Plaintiff has done little more than recount the elements of the claims asserted, with little or no facts alleged in support thereof. While this may have been sufficient to defeat a Rule 12(b)(6) motion under *Conley,* it is not sufficient under *Iqbal.* Accordingly, McGhee's Motion to Dismiss (Clerk's No. 3) is GRANTED.

IT IS SO ORDERED.