**DAVENPORT BANK AND TRUST COMPANY, Appellee,**

v.

**STATE CENTRAL BANK, Appellant.**

**No. 90–1733.**

Supreme Court of Iowa.

May 13, 1992.

Patrick M. Roby and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

Robert V.P. Waterman and Terry M. Giebelstein of Lane & Waterman, Davenport, for appellee.

SCHULTZ, Justice.

Davenport Bank and Trust Company (Davenport Bank) brought this action against State Central Bank (State Central) alleging breach of an alleged accord and satisfaction agreement between the two banks. The alleged agreement settled a dispute over the terms of participation agreements involving loans to a farm corporation. The loans went bad and the banks dispute the entitlement to $241,-429.19 in proceeds from liquidation of the debtor's assets. Following a jury trial, the trial court granted Davenport Bank a judgment notwithstanding an adverse jury verdict favoring State Central's defense of mistake. The court of appeals majority reversed the district court, finding that reasonable minds could draw different inferences from the testimony regarding State Central's establishment of a defense of mistake. We vacate the decision of the court of appeals and affirm the judgment of the trial court.

The original dispute which led to the alleged accord and satisfaction between the banks arose over the terms of a series of participation agreements between 1983–84. Under the participation agreements, Davenport Bank, the correspondent bank, would purchase the amount of a loan which exceeded the loan limit of State Central, the originating bank. The participation agreements which gave rise to this appeal secured loans made to the farming operations of Ed Holtkamp & Sons, Inc. (Holtkamp) for the amount of approximately $1,600,000.

Prior to 1979, Davenport Bank used a preprinted participation agreement form which provided for pro rata sharing of the loan collateral between State Central and Davenport Bank in the event of a default by Holtkamp. Sometime in 1979, Davenport Bank revised its preprinted participation form to provide for a last-in, first-out (LIFO) sharing of the loan collateral. In the event of a loan default under LIFO sharing, Davenport Bank's loan participation would be repaid first before the originating bank, State Central, would receive anything.

Despite Davenport Bank's revision of its pre–1979 pro rata forms, it signed ten participation agreements on the old forms between April 20, 1983, and January 3, 1984. In April 1984, Davenport Bank received a participation agreement on the Holtkamp loan from State Central and noticed it was on the old form. Davenport Bank then retyped the participation agreement on its new form and sent it to State Central. The vice-president of State Central signed the retyped participation agreement and re-

turned it apparently without reading the new LIFO provisions.

In January 1985, State Central determined that liquidation of the Holtkamp loan was necessary. This led to a dispute over how the liquidation proceeds were to be divided between the two banks. In a letter to Davenport Bank, State Central alleged a mistake on the April 23, 1984, participation agreement on the basis that Davenport Bank's new form changed division of the loan collateral from pro rata to LIFO sharing. Between February 1, 1985, and May 7, 1985, a series of letters were exchanged between State Central and Davenport Bank in an attempt to settle the dispute. State Central claimed that the proceeds of the liquidation should be divided pro rata while Davenport Bank claimed the proceeds should be divided on a LIFO basis. On May 7, 1985, State Central proposed the following by letter:

> The first $600,000 collected on the Holtkamp liquidation is Davenport Bank's. The slight adjustment from your $650,000 could be subscribed to the attorney fees we will absorb. After the first $600,000 State Central will receive $600,000. We recognize we might not collect $600,000, but we're working on it. Once State Central's $600,000 is collected, we will share 50/50. There's a chance it might exceed $1,200,000, but everything will have to break just right.

In a May 24, 1985, letter, Davenport Bank responded that the proposal was acceptable.

The principal asset of Holtkamp's farming operation was a Missouri farm which State Central believed was worth approximately $860,000 at the time the May 7, 1985, letter was written. When Holtkamp's collateral was later liquidated in 1987 the Missouri property yielded only $420,000. The liquidation of all of Holtkamp's collateral netted $717,151.62, much less than the $1,200,000 expected. State Central offered to divide the proceeds so that each bank would receive $358,575.81. Davenport Bank maintained the position that State Central's May 7, 1985, letter indicated that Davenport Bank would re-

ceive the first $600,000 even if less than $1,200,000 was collected. It argued that the May 1985 exchange of letters constituted an accord and satisfaction which voided prior agreements between the banks.

Davenport Bank then brought this action against State Central alleging breach of the May 1985 accord and satisfaction. As an affirmative defense, State Central asserted that the alleged accord and satisfaction was void and unenforceable because it was based on an erroneous valuation of Holtkamp's loan collateral. This action was tried to a jury. The jury returned special verdicts consisting of answers to two questions. The two questions submitted to the jury were: (1) Has the plaintiff proved its claim of accord and satisfaction; and (2) has the defendant proved its defense of mistake? The jury answered both questions in the affirmative which resulted in a verdict for State Central.

The trial court granted Davenport Bank's posttrial motion for a judgment notwithstanding the verdict. The trial court concluded substantial evidence supported the jury's determination that an accord and satisfaction did exist. It also concluded that the defense of mistake was not legally viable. It ruled State Central was not entitled to a judgment in its favor on its defense of mistake as a matter of law.

State Central appealed contending the trial court erred in granting Davenport Bank's posttrial motion. Specifically, State Central argued that there was sufficient evidence to create a jury question on mistake. Alternatively, State Central asserted that the trial court erred in submitting the issue of accord and satisfaction to the jury. The court of appeals held there was sufficient evidence to create a jury question on State Central's defense of mistake which would make the accord and satisfaction unenforceable.

Davenport Bank applied for further review contending the court of appeals erred in: (1) failing to allocate the risk of mistake to State Central as a matter of law; and (2) determining there was substantial evidence of mistake of a then-existing or past fact rather than a prediction of the future. We

granted Davenport Bank's application. We will examine the issues concerning the existence of accord and satisfaction and the defense of mistake.

■ Our review is for correction of errors of law. Iowa R.App.P. 4. In reviewing the trial court's ruling granting a motion for judgment notwithstanding the verdict, we must view the evidence in the light most favorable to the party against whom the motion is directed and determine whether the evidence was sufficient to generate a jury question. *Nesler v. Fisher & Co.*, 452 N.W.2d 191, 193 (Iowa 1990); *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990). We now turn to the issues raised in this appeal.

I. *Accord and satisfaction.* State Central argues that the trial court erred by submitting the issue of accord and satisfaction to the jury. Specifically, State Central claims that its proposal in the May 7, 1985, letter does not fall within the legal definition of accord and satisfaction and thus does not create an enforceable contract between the two banks.

■ We have defined accord and satisfaction as "a means of discharging a contractual obligation by agreement of the parties to render and accept a different and substituted performance as full satisfaction of the preexisting claim." *Electra Ad Sign Co. v. Cedar Rapids Truck Center*, 316 N.W.2d 876, 879 (Iowa 1982) (citations omitted). We have also stated that accord and satisfaction is "[a] new contract substituted for an old contract, which is thereby discharged, or for an obligation or cause of action which is settled." *Kellogg v. Iowa State Traveling Men's Ass'n*, 239 Iowa 196, 211, 29 N.W.2d 559, 567 (1947). Like a contract, valid consideration must exist for there to be accord and satisfaction. *Id.* at 212, 29 N.W.2d at 567; *Hubbard Milling Co. v. Citizens State Bank*, 385 N.W.2d 255, 258 (Iowa 1986).

■ State Central contends that it did not promise to do anything other than share in the proceeds on a pro rata basis as the original participation agreement required. In support of its argument that it

made no new promise, State Central maintains that "[t]he purpose of the May 7, 1985, letter was to establish order of the payments, not the terms, based on the shared belief by the parties of the then current factual situation with regard to the value of the Missouri land." State Central argues that it always intended the proceeds from liquidation of Holtkamp's collateral to be divided on a pro rata basis, and that giving Davenport Bank $600,000 first was premised on the mutual assumption that there was at least $1,200,000 in collateral available. State Central further argues that the May 7, 1985, letter lacks consideration and does not fall within the legal definition of accord and satisfaction. Finally, it maintains that the trial court ignored extrinsic evidence regarding State Central's intentions in writing the May 7, 1985, letter.

We believe there was substantial evidence creating a jury issue on whether there was a contract modification by accord and satisfaction in this case. The legal definition of offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). State Central's May 7 letter specifically describes the terms of a plan of disbursing the proceeds from liquidation of Holtkamp's collateral. The jury could infer that this letter proposed a bargain and asked for Davenport Bank's assent to that bargain by its request, "If that is agreeable with you, a note from you would be appreciated." Consequently, we conclude that State Central's letter is clearly an offer in the legal sense.

Davenport Bank's letter of May 24, 1985, stated, "The proposal outlined in your letter dated May 7, 1985 ... is acceptable to Davenport Bank and Trust Company." This response was evidence of Davenport Bank's acceptance or assent to State Central's proposed new bargain regarding disbursements of the liquidation proceeds. Moreover, in a May 28, 1985, letter to Davenport Bank, State Central's statement, "It is nice to get this settled and have the

matter behind us," acknowledged Davenport Bank's acceptance. The jury's task was to determine the purpose of this correspondence and State Central's intent. We hold that there was substantial evidence before the jury on the elements required for an enforceable contract.

State Central's contention that there was no evidence of consideration for the accord and satisfaction must also fail. In accepting the terms of the new contract proposed by State Central, Davenport Bank gave up its claim under the April 23, 1984, LIFO Participation Certificate to the first $830,-000 of collateral liquidation proceeds. Instead, Davenport Bank would receive only the first $600,000. Clearly, there was substantial evidence of consideration for the accord and satisfaction.

■ Finally, State Central's argument that the trial court erred by not considering extrinsic evidence regarding State Central's intentions in writing the May 7 letter must be rejected. The court submitted the claim of accord and satisfaction to the jury. The weight and credibility of this evidence was for the jury and not the court to decide.

II. *Mistake.* We next address the trial court's rejection of the defense of mistake as a matter of law. State Central contends that the mutual mistake in this case, the erroneous valuation of the collateral at $1,200,000 at the time the May 7 letter was written, makes the contract voidable. The trial court rejected this contention reasoning that (1) the agreement allocated the risk of mistake to State Central; and (2) the claimed mistake related to an opinion on future value.

■ A contract may be voidable under certain exceptional circumstances involving mutual mistake. The parties must be mistaken on a basic assumption of which the contract was made unless the adversely affected party bears the risk of mistake. Restatement (Second) of Contracts § 152 (1981). A mistake regarding a "basic assumption" that will justify voidance of a contract must affect the essence of the parties' contract. *Id.* cmt. b. The continuation of existing market conditions is not such a "basic assumption" that will justify voidance of a contract. *Id.; accord* Restatement (Second) of Contracts § 261 cmt. b (1981). In this case, however, State Central contends that the mistake was erroneous valuation of the assets on May 7.

■ Depending on the circumstances, the issue of mistake may be decided by the court as a matter of law or by the jury as a fact issue. The existence and terms of a contract and whether the contract was breached are ordinarily questions for the jury. *Dallenbach v. Mapco Gas Products, Inc.,* 459 N.W.2d 483, 486 (Iowa 1990). However, the interpretation of contractual terms is a legal issue for the court. *Chariton Feed & Grain v. Harder,* 369 N.W.2d 777, 785 (Iowa 1985).

■ The trial court concluded if there was a mistake leading to the accord and satisfaction, State Central must bear the risk of mistake. The court relied upon Restatement (Second) of Contracts section 154 (1981), which states:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

*See also* Restatement of Restitution § 11 (1937). Another authority indicates that a conscious assumption of the risk of an occurrence of an event will defeat a claim of mistake. A. Corbin, *Corbin on Contracts* § 598, at 585 (1960).

State Central challenged the existence of an accord and satisfaction rather than any specific terms set out in the May 7 letter. The jury concluded that there was an accord and satisfaction between the parties. Consequently, it is undisputed that an accord and satisfaction arose out of the letters of May 7 and May 24. Hence, we turn to construction of the terms of the May 7 letter to determine whether State Central

agreed to assume the risk of realizing liquidation proceeds in an amount less than estimated in the May 7 letter. As previously indicated, this is a legal rather than fact issue.

In its letter, State Central prescribed that the first $600,000 collected on the liquidation belongs to Davenport Bank and "[a]fter the first $600,000 State Central will receive $600,000." We believe that this language plainly gives Davenport Bank the first $600,000 collected. Even though the next $600,000 was designated for State Central and any additional to be divided equally, State Central noted that "[w]e recognize we might not collect $600,-000, but we're working on it." We interpret this language as not only negating a pro rata division, but also recognizing that the liquidation proceeds might fall short at State Central's expense. We believe this language sets forth a plan of disposition in the event of shortfall, recognizes the possibility of an erroneous prediction of the amount of proceeds, and allocates the risk of a mistaken prediction of value to State Central. This interpretation leads to a conclusion that State Central assumed the risk of mistake under the agreement and is precluded from the defense of mistake as a matter of law. Consequently, we hold that the trial court correctly concluded that State Central could not avail itself of the defense of mistake as a matter of law.

The trial court also concluded that the claimed mistake on the amount of liquidation proceeds related to an opinion of future value and did not qualify as a mistake of a then-existing or past fact. In view of our determination that State Central assumed the risk of mistake, we need not decide this issue. Whether or not addressed in this opinion, we have also considered and rejected all other issues raised.

In summary, we affirm the ruling of the trial court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

CARTER, J., took no part.